UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **HERMAN JONES, JR.** | **CIVIL ACTION NO. 07-728** |
| **VS.** | **SECTION P** |
| **TONY MANCUSO, ET AL.** | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is *pro se* plaintiff Herman Jones's civil rights suit (42 U.S.C. § 1983) filed *in forma pauperis* on April 20, 2007. Plaintiff is currently incarcerated at the Calcasieu Parish Jail (CPJ) in Lake Charles, Louisiana, and names Calcasieu Parish Sheriff Tony Mancuso and Calcasieu Parish Jail as defendants herein.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

## STATEMENT OF THE CASE

Plaintiff states that on March 20, 2007 he fell out of his top bunk at CPJ. He contends that he fell because of the lack of proper access to "get up and down." [Doc. 1-1, p. 3]. Shortly after the incident, he was taken to the emergency room at Moss Regional Hospital, where he was examined by the ER doctor. He claims that the doctor told him that surgery would be required to properly fix his separated shoulder. He states that he was seen by a CPJ nurse on March 21, 2007, and that she denied further medical treatment and his prescription medication. On May 21, 2007, plaintiff filed an exhibit (dated 5/15/07) to his complaint in which he states, "first time the jail stop  Motrin    4-

13-07. The jail put me back on the Motrin from 4-20-07 to 5-9-07. Today I'm in pain and not on anything. [For pain]. The doctor place me on pain pills. The jail nurse carol place me on these Motrin." [Doc. 4, p. 3]. Plaintiff also contends in this document that he has not been examined by a doctor since the initial visit to the emergency room on March 20, 2007. Plaintiff's May 21, 2007 exhibit also included an inmate request for medical services form [Doc. 4, p. 2]. On this form (dated 5/15/07), he stated that he had a separated shoulder and was waiting on surgery. He also said that his finger tips were numb, that he had a sharp pain in his neck, and that he was having muscle spasms. [Doc. 4, p. 2]. The form was signed by plaintiff and also had the signature of a CPJ nurse. Written on the form was the following, "Please let I/M know we are waiting on his appt per Carol." There was also a notation which appears to state "tell inmate waiting on for ortho referral, sent on". The remainder of the information was not available on the court's copy of the form.

As a result of the above, plaintiff seeks damages for pain and suffering, and requests that the jail "be held responsible for its actions." [Doc. 1-1, p. 4].

## LAW AND ANALYSIS

### I. Frivolity Review

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. See, 28 U.S.C. § 1915(e)(2)(B)(I) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint fails to state a claim upon which relief may be granted if it is clear the

2

plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

**II. 42 U.S.C. §1983**

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983. In order to hold the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. See *Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

Plaintiff's complaint sufficiently establishes his theories of liability with respect to the named defendants, and the court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted, that his claims are frivolous as a matter of law, and that his complaint should be dismissed with prejudice.

### III. Medical Care Claims

It is not clear from plaintiff's complaint whether he is a detainee or a convicted prisoner. The constitutional right of a pretrial detainee to medical care is based upon the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001). Thus, in the present case, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.,* at 458-459. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course

of treatment offered my the medical staff does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra.*

In the instant case, plaintiff's allegations, at most, state a disagreement amongst himself and the medical staff regarding the procedures to treat his medical problems. Plaintiff admits and his pleadings demonstrate, that he was seen and treated in regard to his medical complaints. As stated above, he was taken to the emergency room shortly after the incident. He was also seen by a CPJ nurse on March 21, 2007. Further, he states that he was given Motrin, which was stopped on 4/13/07 but was resumed from 4-20-07 to 5-9-07. Additionally, the notes written on plaintiff's May 14, 2007, request for medical services [Doc. 4, p. 2] evidences that CPJ was

5

addressing the situation ("tell inmate waiting for ortho referral, and let inmate know we are waiting on his appointment.") [Doc. 4, p. 2].  Thus, plaintiff has documented treatment and that he was placed on Motrin.  As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred.  Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison.  See *Shaw v. Murphy*, 121 S.Ct. 1475 (2001); *Procunier v. Martinez*, 94 S.Ct. 1800 (1974).  The decision regarding plaintiff's treatment is best left to the prison officials.  The facts of this matter clearly do not demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated [plaintiff] incorrectly or evince a wanton disregard" for plaintiff's medical needs.  The evidence before the court simply does not support a finding of deliberate indifference.  Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

## V.  Bunk/Ladder Claim

Likewise, plaintiff's allegations that defendants are responsible for his fall and alleged resulting injuries because he was assigned to a top bunk that was not equipped with any climbing apparatus, do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.  First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "so serious as to deprive [plaintiff] of the minimal measure of life's necessities." *Alexander v. Tippah County, Miss*., 351

F.3d 626, 630 (5th Cir. 2003). Second, the inmate must show, as explained above in the court's discussion of plaintiff's medical care claims, that a prison official was deliberately indifferent to inmate health or safety. *Id*. Again, in this regard, a prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837 (emphasis added). Thus, plaintiff must allege facts sufficient to establish that the defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff fails to allege any such facts when he complains about the lack of a ladder to get into and out of the top bunk. A reasonable means of getting into the top bunk, if the inmate would have taken reasonable care for his own safety, was available. The Constitution does not require ladders for bunk beds to remedy the fall experienced by plaintiff. Although the conditions he described may be imperfect and inconvenient, plaintiff has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of *Farmer*, and this claim does not rise to the level of constitutional violation. At best, under these circumstances, plaintiff asserts a garden variety tort claim, not a claim of civil rights violations cognizable under Section 1983. Claims arising from allegedly negligent acts do not give rise to relief under Section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993) (negligent medical care); *Hare v. City of Corinth*, 74 F.3d 633, 641-42, 646 (5th Cir.1996) (negligence insufficient to support failure to protect claim under Section 1983); *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir.1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials'

7

alleged gross negligence in permitting a gas leak to occur); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir.1992), vacated on other grounds, 15 F.3d 443 (5th Cir.1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."). Thus, plaintiff's claims in this regard should be dismissed as frivolous and for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**V. Non-Juridical Person**

Plaintiff has named the CPJ as a defendant. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether CPJ has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. CPJ is a parish corrections facility operated by the Sheriff of Calcasieu Parish, but is not a juridical person. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, Langley v. City of Monroe, 582 So.2d 367 (La.App.2d Cir.1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.) ]. Further, to the extent that plaintiff's complaint would be with the Calcasieu Parish Sheriff's Office, it would also be subject to

dismissal. In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether the Sheriff's Department has the capacity to sue or be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a juridical person. This term is defined by the Louisiana civil Code as "...an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. Art. 24. In Louisiana, however, Parish Sheriff's Offices are not legal entities capable of suing or being sued. See, *Cozzo v. Tangipahoa Parish Council-President*, 279 F.3d 273, 283 (5th Cir. 2002); *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1998); *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 909 (E.D.La. 2001); *Liberty Mutual Insurance Co. v. Grant Parish Sheriff's Department*, 350 So. 2d 236 (La. App.3d Cir.), writ refused, 352 So. 2d 235 (La. 1977); *Newton v. Tangipahoa Parish Sheriff's Office, et al.,* 2004 WL 963790 (E.D.La. May 5, 2004). Thus, any claims against the Sheriff's Department would lack an arguable basis in law.

## VI. Sheriff Mancuso

**Official Capacity**

Under a very liberal reading, the plaintiff may be attempting to allege that Tony Mancuso is liable in his capacity as Sheriff of Calcasieu Parish and in his capacity as a supervisory official over CPJ medical personnel. In his official capacity as a representative of Calcasieu Parish, Sheriff Mancuso may be liable under § 1983 only if his actions were in the execution of an unconstitutional Parish policy or custom which inflicted injury or damage upon plaintiff. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. A policy may also be evidenced by custom that is a persistent, widespread practice of city officials or employees,

which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id*. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir.1984); see also *Bd. of County Com'rs of Bryan County*, *Okl. v. Brown*, 520 U.S. 397, 403 (1997). While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the "known or obvious consequences" that constitutional violations would result. *Bryan County*, 520 U.S. at 407. The plaintiff must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage. See *Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992). Plaintiff has not satisfied this requirement, and further, his pleadings, even under a broad interpretation, do not support nor suggest such a finding. Thus, his claims against Sheriff Mancuso in his official capacity are frivolous.

**Sheriff Mancuso in his Individual Capacity**

Any claims against Mancuso in his individual capacity are also frivolous. Plaintiff has not alleged that Sheriff Mancuso had any direct involvement in the incident made the basis of this suit.  A supervisory official, like Sheriff Mancuso, cannot be held liable pursuant to § 1983 under a theory of respondeat superior simply because a CPJ staff member allegedly violated the plaintiff's constitutional rights. See *Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir.1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir.1979). Rather, Sheriff Mancuso can only be liable under § 1983 if he was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection existed between an act by Sheriff Mancuso and the alleged constitutional violation. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th

Cir.1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981); *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir.1980). Plaintiff does not allege that Mancuso was in any way involved in the events leading up to this civil action. His claims against Sheriff Mancuso in this regard are therefore frivolous. Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, August 6, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE